CLAIRE E. PETERS, Respondent, v. ALFRED GERSCH, Appellant, and JACK V. NEARING, Respondent. (Action No. 1.)

JACK V. NEARING, Respondent, v. ALFRED GERSCH, Appellant. (Action No. 2.)

ALFRED GERSCH et al., Appellants, v. JACK V. NEARING et al., Respondents. (Action No. 3.)

Third Department, May 27, 1969.

*Levene, Gouldin & Thompson* (*Paul C. Gouldin* of counsel), for Alfred Gersch, appellant in Actions Nos. 1 and 2.

*Cooke & McBride* (*John S. McBride* of counsel), for Claire E. Peters, respondent in Action No. 1.

*Alfred Schleider* for Jack V. Nearing, respondent in Actions Nos. 1 and 3 and Claire E. Peters, respondent in Action No. 3.

*Levine, Williams & Newman* (*Marvin A. Newman* of counsel), for respondent in Action No. 2.

*Richard H. Farley* for appellants in Action No. 3.

HERLIHY, J. This is an appeal in Actions No. 1 and No. 2 from judgments of the Supreme Court in favor of the plaintiffs, entered May 20, 1968, in Delaware County, upon a verdict rendered at Trial Term, and from orders of said court entered June 17, 1968, which denied defendant's motions for judgment notwithstanding the verdict and for a new trial, and an appeal in Action No. 3 from a judgment for the defendants entered in the same court on May 15, 1968, and an order denying plaintiffs' motions for judgment notwithstanding the verdict and for a new trial.

The accident happened on May 1, 1965 at about 11 P.M. on Route No. 28 between Andes and Delhi in an area known as Meeker's Curve. It was a clear night and the road was dry. The Cadillac automobile owned by Gersch was proceeding in the direction of Delhi and the 1960 Corvair operated by Nearing was proceeding in the direction of Andes. At Meeker's Curve, the road was approximately 44 feet wide and divided by a double line.

Claire Peters was a passenger in a Corvair automobile owned by Henry G. Peters and operated by Jack V. Nearing.

Alfred Gersch was the owner and operator of a Cadillac automobile in which Margaret Gersch and Minna Gersch were passengers.

There were no eyewitnesses to the accident except the people riding in the two automobiles and following the collision they were unable to give any details of what happened. The occupants of each automobile claimed that the collision occurred on their side of the road. The defendant (plaintiff) operator Gersch claimed to be "blinded" just prior to impact and Nearing claimed that the Gersch automobile when very close to his approaching automobile came over to his side of the road.

On the basis of this testimony the credibility and weight to be given the evidence were jury questions and the verdicts would stand unless the testimony and photographs relating to the physical evidence of the accident (skid marks, gouge marks, etc.) render the verdicts against the weight of the evidence.

The appellant Gersch at the trial, on the motions to set aside the verdicts, and on this appeal forcefully contended that certain physical markings made on the pavement and shown in various photographs unequivocally demonstrate that the accident happened on his side of the road and, therefore, the verdicts are against the weight of the evidence and must be set aside.

There are photographs in evidence which show gouge marks and the beginning of so-called gasoline markings on the Gersch side of the divided center line. The gasoline markings continued across to the Nearing side of the road and some 51 feet down to where the Corvair came to rest. The photographs, many in number, were marked by various witnesses who also testified as to their meaning. There were various measurements made and explained with reference to the markings, the locations of the automobiles following the collision and other pertinent locations. It can be stated without fear of contradiction that aside from the medical, the major portion of the testimony of this three weeks' trial related directly or indirectly to these physical markings on the pavement. As to what these markings meant and their relation to the collision, there were different theories and arguments so that the jury of necessity had a full and complete understanding of where these marks were on the highway, how they supposedly got there and explanations of what they demonstrated as to the happening of the accident. It should be here noted that Gersch contended that the collision did not take place where the gouge marks were made, but some feet distant therefrom. Nearing contended that the Gersch car was on his side of the road at the time of the collision and that the marks evidence such fact. A State Trooper testified that if certain tire skid marks were made by the Cadillac as Gersch contended, then where the gouge marks were made, the front end of the Cadillac would be over the center line and on Nearing's side of the road. None of the parties know how their respective automobiles came to a stop after the collision. Nearing's automobile was on its own side of the road approximately 51 feet back from the gouge marks while Gersch's automobile was on Nearing's side of the road approximately 37 feet from the marks and at a sharp angle therefrom. The two automobiles were considerably apart. There were glass and debris in the road near the center line,

but mostly on Nearing's side. The Cadillac automobile weighed 4,640 pounds while the Corvair weighed 2,350 pounds. The left and center front of the Cadillac and the extreme left front and side of the Corvair were damaged.

There were other factors: the curve itself, the degree thereof, the centrifugal forces and its effect on each operator in maneuvering his automobile, the ascent of the Corvair, the descent by the Cadillac, the headlights of the automobiles. These also in some manner contributed to the happening of the accident.

As to the testimony of the occupants of the automobiles (including the drivers), all may have thought their views, their observations and their conclusions were in all respects accurate and correct while in reality some, if not all, had to be in many respects wrong. It is in circumstances such as here that other evidence, such as physical markings, become of utmost importance and of great consequence in deciding the issues as to the rights of the respective litigants. The appellant Gersch makes a strong argument based on these physical facts, but the jury did not accept that theory and its verdicts are not against the weight of the credible evidence. There was no testimony as to what the automobiles did following the collision. They may have spun around in whole or in part; they may have rebounded after the initial impact or done many other unusual things, but there is no dispute as to where each automobile finally came to rest. In fact, there is testimony that the Nearing vehicle was facing in a direction opposite its direction of travel prior to impact.

From the record the jury might have found in favor of Gersch; it might have found both operators negligent, but it did not. The fact that it found in favor of Nearing and his passenger Peters does not make its verdicts wrong. There were other factors such as the jury's observation of the witnesses, its examination of the photographs, its deductions and conclusions, the credibility of the parties and the witnesses. All of these factors weigh upon the court's right to interfere with a jury verdict once rendered. As stated in *Rapant* v. *Ogsbury* (279 App. Div. 298, 299): "The point of interference is where the judge thinks the jury has gone much too far afield from the course the judge regards as proper, in the sense of his professional way of looking at facts."

This three-week trial was very well conducted with all of the litigants represented by experienced and capable counsel. The witnesses produced by the parties were subject to direct and cross-examination by the various attorneys and in many instances subject to redirect and recross-examination. The

many exhibits in evidence were marked by witnesses and such markings reaffirmed by additional witnesses. There can be no question that the jury knew and understood the theory and contentions of each party. Its unanimous verdicts reflect such knowledge. At the close of the evidence each counsel made a summation to the jury (which is in the record) reiterating their arguments. Thereafter the court clearly outlined the rights of each litigant and properly instructed the jury as to the law, and as a result the jury returned only once for further instructions; exceptions and requests to charge were few and in most instances granted. In other words, there was no beclouding the issues and there is not any ground for a claim of prejudice, bias or sympathy.

The many cases cited by appellants in their briefs, while emphasizing the general rule as to physical evidence, are not of themselves controlling. It is axiomatic, particularly in automobile accident litigation, that each action is governed by its own peculiar facts.

It is conceivable that some other jury might have returned a different result, but that does not make the present verdicts wrong factually or legally so as to justify this court's intervention. While it may be argued that the physical facts as shown on the photographs meant something different than what the jury decided, in consideration of all of the other factors in this exceptionally well tried lawsuit, in balance, the verdicts of the jury should be affirmed.

As to the amounts of the verdicts, under the circumstances they are not excessive. The jury awarded Miss Peters $100,000 and Mr. Nearing $30,000.

As to the other contentions raised by the appellants, we find them insubstantial. In one instance, no proper objection was taken and the other alleged errors, if such there be, are not sufficient to warrant a new trial. There was no clear expression by Undersheriff Telian as to the point of impact on direct examination and the court properly refused the offer of appellants' counsel to put before the jury the opinion of that witness as to the point of impact of the vehicles. The location of the point of impact was for the jury and the limitations as to the use of the prior testimony of Telian did not prevent the appellants' counsel from establishing before the jury all that Telian had previously testified to as regards the physical evidence at the scene of the accident. The information as to a blackout on the part of Gersch came into the record as part of the history received by Dr. Klepetar. No objection to the testimony was taken by the appellants and upon further questioning the doctor

stated that he did not get the information from Gersch. The appellants made no motion to strike the testimony once it was discovered to have been hearsay. The reference of counsel for plaintiff Peters to a " concrete casket " was not prejudicial in the present case since it was proven to the jury that she had been in a body cast.

The judgments and orders should be affirmed, with costs.

REYNOLDS, J. (dissenting). These judgments should be reversed and new trials granted. The verdicts were patently against the weight of the undisputed, disinterested evidence. The appellants (Gersch) did not receive a fair trial because of highly prejudicial errors which occurred upon the trial. In the interests of justice another jury should take a look at this case. The only real issue in the case was where the actual impact occurred between the two vehicles with reference to the double center line on this wide highway. The majority opinion correctly states " there were no eyewitnesses to the accident except the people riding in the two automobiles and following the collision they were unable to give any details of what happened. The occupants of each automobile claimed that the collision occurred on their side of the road ". (In this regard respondent Nearing and his passenger Peters were substantially discredited by their prior inconsistent testimony given at the Motor Vehicle hearing.) In such a situation, the physical facts become of paramount importance in determining where the actual impact occurred. In this case we have undisputed disinterested testimony by the investigating officers at the scene of the accident of physical facts which can lead to no other conclusion except that the impact occurred on Gersch's side of the highway. These observations were made by the officers before the occupants were removed from the cars. They are buttressed by actual photographs. The spoken word of witnesses may be altered by interest, by mistake, or by bad recollection, but the physical facts, such as marks upon the highway, position of cars etc. do not suffer from these disabilities and speak for themselves especially when recorded by photographs. The undisputed, conceded physical facts at the scene of this accident testified to by the disinterested witnesses, were *that there were fresh gouge marks located in Gersch's lane of travel four feet from the center line.* It is obvious that the crash occurred immediately prior to the gouge marks. Undamaged cars do not leave gouge marks. There were also skid marks before the gouge marks on appellants' side of the double center line. *There was a trail of gasoline which started at the gouge marks*

*and lead directly to the Nearing car.* The gasoline tank located in the Nearing Corvair (which is a rear engine model), is in front of the dash, and this tank was ruptured in the collision. Of course, *no one could claim that the gas tank and the front end of the Corvair was not right at these gouge marks when it started to leak,* which was as stated on Gersch's side of the highway and this is confirmed by the photograph. There was a trail of skid marks which also led from these gouge marks to the Cadillac in its stopped position. The cars collided at the left front of each vehicle. The left headlights of each car were demolished. The right headlights of each car were intact. There were no marks and no claim of any marks to show that this accident occurred on Nearing's side of the highway as he claimed at the trial. The glass near the center line was scattered after the gouge marks and towards Delhi and gives no clue to the point of impact.

One would wonder how this jury could go so far astray, how it could make the incredible finding that it did, i.e., that the accident occurred on Nearing's side of the highway (the jury had to make this finding because in the death case of Minna Gersch, who was a passenger in the Gersch car, they returned a verdict of no cause of action) until the record is examined and the two serious errors in the receipt of testimony appear. These errors went right to the heart of the determination of the only issue of liability — right to the heart of the litigation. Undersheriff Telian, at the trial, on direct examination by plaintiffs' counsel, placed the point of impact at an entirely different spot than he had testified it occurred on the Motor Vehicle hearing. When Gersch's counsel attempted to cross-examine Telian as to the facts testified to and the contrary opinion expressed at the Motor Vehicle hearing, the Trial Justice refused to allow him to do so. In the light of the facts of this case this ruling was highly prejudicial. As has been mentioned before, this evidence was of great importance and went to the jugular of the only real issue of the case on liability. That appellants had an absolute right to attempt to impeach this witness by previous contrary statements and conclusions on the Motor Vehicle hearing is clear and unassailable. This was certainly error because Telian had expressed an opinion on direct examination relating to the point of impact which conflicted with his prior testimony at the Motor Vehicle hearing. An objection should not have been sustained on the ground that the question called for a conclusion or opinion from Telian because a witness may be impeached by reference to prior incon-

sistent opinions or conclusions (*Matter of Oates,* 171 App. Div. 679; Richardson, Evidence, § 513 [Prince, 9th ed., 1964]).

The statement by the court that it had not been shown that Telian was a hostile witness had no relevance whatever to the situation. The erroneous ruling was not remedied when the trial court permitted some parts of the testimony to be read to the witness, *because all parts of the testimony relating to point of impact were excluded.* Can it fairly be said that an adequate basis was not laid for introducing the prior testimony for purposes of contradiction and impeachment? In a case where the facts appear, as they do in this case, could it be fairly said that it was not prejudicial?

The second serious error which also went right to the heart of the issue of liability was the receipt in evidence of Dr. Charles Klepetar's office record. This doctor had treated the injured persons in this accident. One of these people was Gersch, the appellant driver, and in his office record the following note appeared: " 11:15 p.m. Cadillac driving Meeker's Turn from Andes. Head-on collision with Corvair. (*Blackout. Didn't know about other car.*) " The office record was marked for identification and counsel attempted to preliminarily question the doctor about this notation before its receipt into evidence, and objected to its receipt as highly prejudicial. Despite the fact that this was clearly pointed out to the court and he understood the problem, the exhibit was received. After the exhibit was received in evidence and, of course, after the denial of testing its foundation for admission, it developed that this notation made by Dr. Klepetar was not told to him by Gersch, but was related to him by a nurse and was complete hearsay. Dr. Klepetar explained that Gersch was hit in the head in the accident and blacked out for a second. *Despite this testimony defendant-respondent's counsel stated at least six times in his recorded summation that Gersch had blacked out before the accident, and there was the notation to prove it.* Thus through error in its receipt without preliminary testing which would have resulted in the avoidance of the serious prejudice to appellants by its deletion, it is obvious that the opportunity to mislead the jury was present, and led to a gross miscarriage of justice.

The weak argument of respondent's counsel adopted in the majority opinion that, assuming that a tire mark near the gouge marks (four feet from the center line on Gersch's side of the highway) was made by the right front tire of the Cadillac, an inference would be permitted that the Cadillac at the time of

the crash was partially on the wrong side of the highway is fallacious for three reasons. First, the crash had to occur *before* the gouge marks were made — and the witness, the trooper, made this very clear because the tire marks preceding the gouge marks were further to the right on Gersch's side of the road. The measurement would have no bearing on the point of impact. Second, the testimony on the trial developed that the Cadillac tires were five feet from center to center. The double center line was 13½ inches wide. Even at the gouge marks, accepting respondent's argument, the left front of the Cadillac would not be on the wrong side of the highway. Third, *the left front ends of the vehicles collided just before the gouge marks* and the left front wheel of the Cadillac had to be, not near the center line, but at the right side of the gouge marks — substantially on Gersch's side of the highway. The physical facts certify to this beyond any doubt, and also the gouge marks and leaking gasoline from the Corvair confirm beyond any doubt that the left side of the Corvair had to be at least four feet on the wrong side of the road, substantially on Gersch's side of the highway. There were no physical facts, no marks, which would permit respondent's argument. If it were accepted, the right side of the Cadillac would have had to collide with the Corvair, and additionally it would merely permit an inference that both cars were on the wrong side of the road, and permit the passengers in both vehicles to recover.

The majority opinion is replete with generalities but the underlying basis for it is that it was a "question of fact for the jury". It is easy to say that it was a question of fact for the jury and to say "probably there is enough here to sustain it", even though there may be nothing of merit to sustain it. Jurors are human and can err, either through mistake, lack of understanding or bias, or prejudice arising on the trial. But, under our judicial process appellate courts are clothed with the power and the *duty* to supervise verdicts and should not shirk this duty in a proper case. And quoting from *Rapant* v. *Ogsbury* (279 App. Div. 298, 299), "It merely begs the question, therefore, to say that 'only issues of fact' underline a verdict, because if the power and the necessity for judicial supervision over verdicts is once admitted, there is a point where the power begins to be exercised".

Surely the result reached on the facts of this case requires, at the least, a new trial to be heard by another jury. If a jury on the facts of the instant case had allowed the passengers in each car to recover, one might not agree fully, but might be

compelled to say that the duty of the appellate court to interfere may not have been reached.

The summation of counsel for respondent Peters was highly inflammatory and in particular on two occasions stated to the jury that she was in a " concrete casket " in the past — referring to a body cast — and would be in a concrete casket in the future; a motion to withdraw a juror and declare a mistrial on the inflammatory summation was denied by the court. Both verdicts were grossly excessive.

In sum, for the above reasons, in the interest of justice and fair play these verdicts should not be allowed to stand. Litigants are entitled to a fair trial. These appellants did not receive one under the circumstances.

GIBSON, P. J., STALEY, JR., and GREENBLOTT, JJ., concur with HERLIHY, J.; REYNOLDS, J., dissents and votes to reverse and order new trials, in an opinion.

Judgments and orders affirmed, with costs.